J-A35024-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| TERRENCE R. WEISHNER, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| DEBORAH ANN WEISHNER, | |
| Appellee | No. 394 WDA 2015 |

Appeal from the Order February 3, 2015
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 12363 CD 2010

BEFORE:  BENDER, P.J.E., SHOGAN, and MUSMANNO, JJ.

MEMORANDUM BY SHOGAN, J.:                **FILED FEBRUARY 26, 2016**

Appellant, Terrence R. Weishner ("Husband"), appeals from the order finding him in contempt of an equitable distribution order in this divorce matter involving Appellee, Deborah Ann Weishner ("Wife").  We affirm.

We summarize the history of this case as follows.  Husband and Wife were married on June 3, 1978.  On November 24, 2010, Husband filed a complaint in divorce.  During the divorce proceedings, Husband received a monthly pension from the Pennsylvania State Employees' Retirement System ("SERS").  Based upon the amount of Husband's pension, Wife received monthly alimony *pendente lite* payments of $2,100.00.

On May 16, 2014, upon agreement of the parties, the trial court entered an order disposing of the parties' equitable distribution claims.  Paragraph five of the equitable distribution order addressed Wife's

entitlement to a portion of Husband's SERS pension in the amount of $2,000.00 per month and the preparation of a qualified domestic relations order ("QDRO"). The parties' divorce decree was entered on August 12, 2014.

Because Husband did not make $2,000.00 payments to Wife while the QDRO was being finalized by SERS, on December 11, 2014, Wife sent a *pro se* letter to the court of common pleas seeking to hold Husband in contempt of the May 16, 2014 equitable distribution order. At a hearing on Wife's petition for contempt on January 26, 2015, Husband filed an answer and new matter alleging that paragraph five of the equitable distribution order was ambiguous because it did not identify a date upon which the monthly payments from Husband's pension to Wife were to begin. Husband claimed that the parties agreed the payments were to begin once the QDRO was approved by SERS.

On February 3, 2015, the trial court entered an order finding Husband in contempt of paragraph five of the May 16, 2014 order. The trial court concluded that Husband was obligated to pay Wife $2,000.00 per month from his SERS pension, regardless of whether the amount was deducted from Husband's pension pursuant to a QDRO. The trial court also found that Husband was in arrears $10,000.00 (the equivalent of five monthly payments), and ordered Husband to pay Wife the sum of $10,000.00 within thirty days of the February 3, 2015 order.

Husband filed a motion for reconsideration, which the trial court denied. This timely appeal followed. Both Husband and the trial court have complied with Pa.R.A.P. 1925.

Husband presents the following issues for our review:

[1.] Whether the Trial Court erred in finding that Paragraph 5 of the Order of May 16, 2014 obligated Husband to pay $2,000 per month to Wife as her share of equitable distribution from his pension regardless of whether it was deducted from his pension pursuant to a QDRO or not, and, in making such finding where the record and evidence showed that neither party intended or expected that the payments would start prior to being deducted from Husband's pension pursuant to a QDRO and where Wife's allegations of contempt and request for damages were based on delay in the receipt of pension distributions because of delay in the QDRO process rather than because Husband allegedly failed to make direct distributions to Wife before they were made by deduction pursuant to the QDRO[?]

[2.] Whether the Trial Court erred in finding Husband in contempt of Paragraph 5 of the Trial Court's Order of May 16, 2014 for failure to pay the sum of $2,000 per month from his pension?

[3.] Whether the Trial Court erred in determining that Husband was in arrears in the amount of $10,000.00 where the evidence showed that Wife was to receive a distribution by pension deduction for January of 2015 and where Husband had overpaid spousal support to Wife and the Court did not consider a set off of any or all of the overpayment?

Husband's Brief at 4-5.

In his first two issues, Husband argues that the trial court erred in finding him in contempt of paragraph five of the equitable distribution order. Husband contends that paragraph five is ambiguous, and a consideration of the parties' intent and expectations was necessary for the proper

interpretation of the paragraph.  Husband claims that neither party intended that payments would start prior to their deductions from Husband's pension plan pursuant to a QDRO, and that the trial court's finding of contempt was improper because Husband did not act with wrongful intent.  Rather, Husband claims that he was merely waiting for the QDRO to be in place for payments to begin.

> "When considering an appeal from an [o]rder holding a party in contempt for failure to comply with a court [o]rder, our scope of review is narrow: we will reverse only upon a showing the court abused its discretion."  ***Harcar v. Harcar***, 982 A.2d 1230, 1234 (Pa. Super. 2009) (quoting ***Hopkins v. Byes***, 954 A.2d 654, 655 (Pa. Super. 2008)).  We also must consider that:
>
> > Each court is the exclusive judge of contempts against its process.  The contempt power is essential to the preservation of the court's authority and prevents the administration of justice from falling into disrepute.  When reviewing an appeal from a contempt order, the appellate court must place great reliance upon the discretion of the trial judge.
>
> ***Langendorfer v. Spearman***, 797 A.2d 303, 307 (Pa. Super. 2002) (quoting ***Garr v. Peters***, 773 A.2d 183, 189 (Pa. Super. 2001)).  "The court abuses its discretion if it misapplies the law or exercises its discretion in a manner lacking reason."  ***Godfrey v. Godfrey***, 894 A.2d 776, 780 (Pa. Super. 2006).  Additionally, "[i]n proceedings for civil contempt of court, the general rule is that the burden of proof rests with the complaining party to demonstrate, by [a] preponderance of the evidence that the defendant is in noncompliance with a court order."  ***Lachat v. Hinchcliffe***, 769 A.2d 481, 488 (Pa. Super. 2001).

***Habjan v. Habjan***, 73 A.3d 630, 637 (Pa. Super. 2013).

"It is well-established that the law of contracts governs marital settlement agreements."  ***Vaccarello v. Vaccarello***, 757 A.2d 909, 914

(2000). Our courts observe the following principles in reviewing a trial court's interpretation of a marital settlement agreement:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.
>
> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa. Super. 2007) (citation omitted).

We have also reiterated this Court's limited role in interpreting contracts such as property settlement agreements between spouses:

> A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake.
>
> * * *
>
> It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.
>
> *Lang v. Meske*, 850 A.2d 737, 739 (Pa. Super. 2004) (internal citations omitted) (quoting *Osial v. Cook*, 803 A.2d 209, 213–214 (Pa. Super. 2002)). Further, where, as here, the words of a

contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself. ***Brosovic v. Nationwide Mut. Ins.***, 841 A.2d 1071 (Pa. Super. 2004).

***Bianchi v. Bianchi***, 859 A.2d 511, 515 (Pa. Super. 2004).

The text of paragraph five provides as follows:

5. Wife shall be entitled to $2,000.00 per month from Husband's SERS pension. Husband's counsel shall draft a QDRO that has been approved by SERS. Husband shall receive any and all remaining amounts from this pension.

Order, 4/16/14, at 1.

The trial court made the following determinations, which we conclude

are supported by the relevant law and certified record:

The [trial c]ourt found that paragraph 5 of the May 16, 2014 Order of Court was unambiguous. The [trial c]ourt disagrees that in finding Husband in contempt, the [trial c]ourt substituted its own judgment and interpretation of paragraph 5 over the parties' intentions when entering into the agreement. The parties' interpretation and intent in the formation of the contract was not relevant as there is no ambiguity. Paragraph 5 clearly states that Wife is entitled to $2,000.00 per month from Husband's SERS pension. While the Order instructs Husband's counsel to draft a QDRO to be approved by SERS, there is no language within paragraph 5 or the Order to defer commencement of the obligation until this was accomplished. For example, the paragraph does not state that Wife shall be entitled to $2,000.00 per month from Husband's SERS pension *after or when* the QDRO is drafted and approved by SERS. The provision merely sets forth that it is Husband's obligation to draft the QDRO and seek approval.

The [trial c]ourt disagrees with Husband that there is a "lack of evidence" to support the [trial c]ourt's finding. To the contrary, the [trial c]ourt finds no evidence to support Husband's contention that his obligation was only to start after a QDRO was accepted by SERS. In making this argument, Husband acknowledges that the timeframe in which the QDRO would be

> approved and implemented was uncertain. Husband contends that this was considered by the parties and Wife was aware of a possible delay. [The trial c]ourt disagrees. As stated above, the [trial c]ourt finds paragraph 5 to be clear and unambiguous, providing Wife a payment of $2,000 per month from Husband's pension. The [trial c]ourt found no contingencies in paragraph 5 or the Order to indicate that the parties had meant for there to be a delay in when the payments were to commence.

Trial Court Opinion, 4/29/15, at 7-8 (emphasis in original).

Likewise, upon review of the language of paragraph five, we are constrained to agree with the trial court that there is no ambiguity and that Wife was entitled to $2,000.00 per month from Husband's SERS pension, regardless of when a QDRO was drafted and approved. Thus, Wife's entitlement to $2,000.00 from Husband's SERS pension began when the order was signed by the trial court. Accordingly, we conclude that Husband has failed to establish that the trial court abused its discretion in finding him in contempt of paragraph five of the court order, and his contrary claims in this regard lack merit.

In his final argument, Husband asserts that the trial court erred in calculating the amount of his arrears. Husband's Brief at 37-39. Husband notes that Wife was due to be paid by SERS under the QDRO at the end of January 2015. Basically, Husband contends that he should have been given a credit due to his overpayment of spousal support.

However, Husband's request for a credit on his alleged overpayment of alimony *pendente lite* to Wife was not properly before the trial court in relation to Wife's petition for contempt. Rather, as Pa.R.C.P. 1910.1 states,

"the rules of this chapter govern all civil actions or proceedings brought in the court of common pleas to enforce a duty of support, or an obligation to pay alimony pendente lite." In addition, Pa.R.C.P. 1910.19(g)(2) specifies how a party is to seek recovery from an over payment of support once an order of support is terminated.[1]

The trial court correctly noted Husband's procedural misstep as follows:

> The [trial c]ourt further finds Husband's argument that Wife filed a petition with "unclean hands" and that Husband had overpaid spousal support, which was not considered by the [trial

---

[1] The pertinent text of Pa.R.C.P. 1910.19 provides as follows:

**Rule 1910.19. Support. Modification. Termination. Guidelines as Substantial Change in Circumstances. Overpayments**

* * *

**(g) Overpayments.**

* * *

(2) *Order Terminated.* If there is an overpayment in any amount and there is no charging order in effect, within one year of the termination of the charging order, the former obligor may file a petition with the domestic relations section seeking recovery of the overpayment. A copy shall be served upon the former obligee as original process. The domestic relations section shall schedule a conference on the petition, which shall be conducted consistent with the rules governing support actions. The domestic relations section shall have the authority to enter an order against the former obligee for the amount of the overpayment in a monthly amount to be determined by the trier of fact after consideration of the former obligee's ability to pay.

c]ourt as an offset to Husband's arrears, is not pertinent to the issue at hand or properly raised during the proceeding. While Husband did respond to Wife's contempt petition with an answer and new matter, in which he alleged he had overpaid spousal support, [the trial c]ourt was never requested to offset the alleged arrears owed by Husband **nor was the contempt proceeding the appropriate forum for this request to establish an overpayment of a Domestic Relations support order.**

Trial Court Opinion, 4/29/15, at 9 (emphasis added).

We agree with the trial court that Husband's attempt to recapture any alleged overpayment of alimony *pendente lite* as a credit to the amount due to Wife for failure to pay her according to paragraph five of the equitable distribution order was not appropriate. Therefore, we dismiss Husband's claim of trial court error without prejudice to Husband's ability to seek recovery for any alleged overpayment of alimony *pendente lite via* the correct methods set forth under the Pennsylvania Rules of Civil Procedure.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 2/26/2016