**Jean M. KEATING, Appellee,**

v.

**Jung Suk KEATING, Appellant.**

Superior Court of Pennsylvania.

Submitted June 23, 2004.

Filed July 16, 2004.

Thomas J. Nickels, Orwigsburg, for appellant.

Susan M. Kadel, Hershey, for appellee.

BEFORE: MUSMANNO, GANTMAN, and BECK, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Jung Suk Keating ("Jung Suk") challenges the trial court's order entering declaratory judgment in favor of Appellee, Jean M. Keating ("Jean"). Specifically, Jung Suk contests the court's finding that Jean was the legal wife of the decedent, Benjamin F. Keating, Jr. ("Ben"), at the time of his death. We hold the trial court properly determined that Jean was the legal wife of Ben at the time of his death, because she had no notice or opportunity to be heard in the Guam divorce proceeding. Accordingly, we affirm.

¶ 2 The trial court's opinion sets forth the relevant facts of this case as follows:

Ben and Jean Keating were married October 5, 1946 and lived together in Cumberland County. Ben worked for the United States government and the nature of his work required that he spend most of his time overseas, mostly in South East Asia. When Ben came back to the United States he would stay with Jean but the couple never resided together after 1978.

In 1986, Ben filed for divorce here in Cumberland County. Ben and Jean entered into settlement negotiations during which there was dispute regarding the value and distribution of Ben's federal government pension. In 1987, Ben traveled to Guam, a territory of the United States. While in Guam for seven days, Ben obtained a driver's license, opened a bank account, and registered to vote. Meeting the Guam residency requirements, Ben sought and was granted a divorce from Jean Keating.

Neither Ben nor the Guam court notified Jean that a divorce had been filed or finalized. Jean had, in fact, no notice or knowledge of that divorce action.

Two days after the Guam divorce Ben married Jung Suk Keating in Korea. They returned to the United States together and resided in Schuylkill County. They lived openly as man and wife and raised a son. Ben's divorce from Jean was never finalized in this court. In fact, in 1989, Ben's divorce complaint against Jean was dismissed due to lack of docket activity.

In 19[89], Jean filed for spousal support. As a result, Ben was ordered to pay Jean four hundred dollars ($400) a month. He made those monthly payments until his death on October 11, 2001. Shortly before his death, Ben attempted to negotiate some economic issues with Jean. He also transferred sole interest in their former marital home, where she still resided. After Ben's death, Jean filed an application for death benefits under Ben's Federal Civil Service retirement. The Office of Personnel Management (OPM) informed Jean that she was not entitled to survivor annuity because she was not married to Ben at the time of his death. The OPM provided Jean a copy of the August 18, 1987 divorce decree from the Superior Court of Guam. This was the first knowledge Jean had of the Guam divorce.

Jean requested that the OPM reconsider her application for the survivor annuity. Because Jung Suk Keating was already receiving the survivorship annuity, the OPM told Jean that there were "competing claimants" for Ben's annuity. The OPM advised Jean that a state court could establish the validity of her marriage to Ben at the time of his death. Jean [sought] a Declaratory Judgment

from [the trial court] stating that she was legally married to Ben Keating at the time of his death.

(Trial Court Opinion, filed November 10, 2003, at 2–3). Following an evidentiary hearing,[1] the trial court declared Jean as Ben's legal widow. The court reasoned the Guam divorce was a nullity, because Jean had no notice or opportunity to be heard at the Guam divorce proceedings. Moreover, the trial court held Jean had done nothing to estop her from challenging the divorce decree. By order dated November 10, 2003, the court entered declaratory judgment in favor of Jean. Jung Suk filed this timely appeal.

¶ 3 Jung Suk presents the following issues for our review:

IS A DIVORCE DECREE ISSUED BY GUAM COURT ENTITLED TO FULL FAITH AND CREDIT BY THE PENNSYLVANIA TRIAL COURT WHEN JURISDICTION IS NOT DISPROVED BY A PREPONDERANCE OF THE EVIDENCE PRESENTED BY THE PERSON ATTACKING THE VALIDITY OF THE DECREE?

WHEN [A SPOUSE] IN A GUAM DIVORCE PROCEEDING IS NOT AFFORDED DUE PROCESS IN THAT PROCEEDING MAY THE SUBSEQUENT BEHAVIOR OF THE PARTIES ESTOP [THAT SPOUSE] FROM COLLATERALLY ATTACKING THE GUAM DIVORCE DECREE?

(Jung Suk's Brief at 3).

■ ¶ 4 This appeal is subject to the following principles:

Our standard of review in a declaratory judgment action is limited to determining whether the trial court clearly abused its discretion or committed an error of law. We may not substitute our judgment for that of the trial court if the court's determination is supported by the evidence.

Additionally,

[we] will review the decision of the [trial] court as we would a decree in equity and set aside the factual conclusions of that court only where they are not supported by adequate evidence. The application of the law, however, is always subject to our review.

*Erie Ins. Exchange v. Muff,* 851 A.2d 919, 925 (Pa.Super.2004) (internal citations omitted).

■ ¶ 5 Jung Suk argues the Guam divorce decree is entitled to full faith and credit. Ben fulfilled the requirements for residency in Guam, therefore the Guam court had jurisdiction to enter the divorce decree. Thus, the Guam divorce decree is valid on its face, and must be recognized in Pennsylvania.

¶ 6 Jung Suk also contends Jean is estopped from challenging the validity of the Guam divorce decree. She maintains Jean was economically enriched relative to the decree, receiving spousal support and Ben's interest in the marital home. Accordingly, Jung Suk concludes Jean con-

---

1. The Pennsylvania Supreme Court has held a pre-trial order that declares the rights of the parties is a final and immediately appealable order. *See Nationwide Mut. Ins. Co. v. Wickett,* 563 Pa. 595, 763 A.2d 813 (2000); 42 Pa.C.S.A. § 7532. However, where a declaratory judgment is entered after a jury or nonjury trial, post-trial motions must be filed to preserve issues for appellate review. *Motor-* *ists Mut. Ins. Co. v. Pinkerton,* 574 Pa. 333, 830 A.2d 958 (2003). The proceedings in the instant case were in the nature of a pre-trial evidentiary hearing only. Therefore, the order entering declaratory judgment was immediately appealable, and post-trial motions were not necessary to preserve the issues for appellate review.

structively recognized the Guam divorce decree and cannot collaterally attack it.

¶ 7 Jean argues that the Guam divorce decree cannot be afforded full faith and credit by Pennsylvania, because the decree was entered without giving her notice or an opportunity to be heard. As such, Jean was Ben's legal wife at the time of his death and is now his legal widow. Moreover, Jean argues she cannot be equitably estopped from collaterally attacking the Guam divorce decree, because she at no time acknowledged, relied upon, or benefited from the Guam divorce. We agree.

 ¶ 8 A divorce decree is presumptively valid and is a conclusive adjudication of everything involved therein except the jurisdictional facts on which it is founded. *Stambaugh v. Stambaugh,* 458 Pa. 147, 151, 329 A.2d 483, 485 (1974). In many cases, the *bona fide* domicile is the essential jurisdictional fact necessary to give any decree extraterritorial effect. *Id.* The party attacking the divorce decree has the burden to show that jurisdiction was lacking when the decree was entered. *Id.*

 ¶ 9 A divorce granted in one jurisdiction is enforceable in another jurisdiction through the Full Faith and Credit clause of the United States Constitution. *Barnes v. Buck,* 464 Pa. 357, 346 A.2d 778 (1975). The Full Faith and Credit clause is found in Article IV, Section 1 of the United States Constitution, which provides in relevant part:

> Full Faith and Credit shall be given in each state to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by the general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof.

U.S.C.A. Const. Art. IV, § 1. Although Article IV, Section 1 provides for full faith and credit to valid judgments of other states and territories, the Full Faith and Credit clause does not require a court to recognize a judgment rendered without jurisdiction or without notice and fair opportunity to be heard. *Barnes, supra;* Restatement (Second) Conflict of Laws § 104 (1971) (stating: "A judgment rendered without judicial jurisdiction or without adequate notice or adequate opportunity to be heard will not be recognized or enforced in other states"). In other words, "A state cannot exercise through its courts judicial jurisdiction over the status of a person unless a method of notification is employed which is reasonably calculated to give [her] knowledge of the attempted exercise and an opportunity to be heard." *Commonwealth v. Custer,* 145 Pa.Super. 535, 21 A.2d 524, 527 (1941) (addressing aspects of divorce law) (citing Restatement Conflict of Laws § 109 (1934)).

 ¶ 10 Moreover, the court must focus on all of the surrounding circumstances when it considers whether to estop a spouse from challenging the validity of a foreign divorce decree. *Lowenschuss v. Lowenschuss,* 396 Pa.Super. 531, 579 A.2d 377, 381 (1990), *appeal denied,* 527 Pa. 611, 590 A.2d 297 (1991). In addition to scrutinizing the procurement of the divorce, the court looks at the conduct of the parties thereafter and the effect on others of a declaration of the invalidity of the divorce. *Id.*

¶ 11 Instantly, the trial court reasoned: [Jung Suk] correctly observes that this court must accept the divorce decree from the Superior Court of Guam unless it is found to be invalid. It is, however, precisely because the decree is invalid that we will refuse to recognize it. This court is not required to give full faith and credit to a judgment rendered without jurisdiction or without notice and a fair opportunity to be heard; due pro-

cess of law mandates that a court not recognize such a judgment.

(Trial Court Opinion, filed November 10, 2003, at 3) (internal citations omitted). We agree. Jung Suk improperly focuses on issues of domicile. Although residency is a requirement, and domicile is an essential jurisdictional fact, when determining jurisdiction, Jung Suk fails to recognize that the parties to a divorce decree must also be afforded due process rights. There is no evidence to suggest Jean had any notice of the Guam divorce proceedings. As the trial court stated:

> Jean Keating has demonstrated irregularities in the Guam divorce proceedings. These are strikingly evident from the fact that she had no knowledge of the divorce for over fifteen years. She was never given notice and, thus, did not have an opportunity to be present or be heard. The lack of notice deprived the court of jurisdiction over the person of [of Jean] [in the divorce proceeding]. Thus, the Guam divorce decree was a nullity. Moreover, Jean Keating has done nothing which would estop her from raising this issue.

(*Id.* at 4).

¶ 12 Moreover, Jung Suk has provided no persuasive evidence to suggest that Jean accepted spousal support or Ben's interest in the marital home as a result of the Guam divorce. Any economic benefit she received was just as likely obtained pursuant to the parties' separation.

¶ 13 The single Pennsylvania case analogous to the present case is *Ecker v. Ecker*, 36 Pa. D & C. 4th 104 (Allegheny Cty. 1997), *affirmed*, 701 A.2d 786 (1997), *appeal denied*, 553 Pa. 689, 717 A.2d 1028 (1998). In *Ecker*, the trial court found the first wife was estopped from collaterally attacking the foreign divorce decree, because she had accepted payment in consideration for signing a settlement agreement

that recognized the validity of the foreign divorce. *Id.* However, *Ecker* is distinguishable here, because we have no written settlement agreement or evidence to suggest that Jean accepted the spousal support or property interest in acquiescence to the Guam divorce decree. Therefore, Jean is not estopped from attacking its validity.

¶ 14 For the aforementioned reasons, we hold the trial court properly determined Jean was the legal wife of Ben at the time of his death, because she had no notice or opportunity to be heard in the Guam divorce proceeding. Accordingly, we affirm the court's order entering declaratory judgment in favor of Jean.

¶ 15 Order affirmed.