**Robert Carl BIANCHI, Appellee**

v.

**Janice Rose BIANCHI, A/K/A Janice Rose Ruffo, Appellant.**

Superior Court of Pennsylvania.

Argued April 21, 2004.

Filed Sept. 23, 2004.

Michael H. Van Buskirk, Philadelphia, for appellant.

Joseph V. Cardona, Philadelphia, for appellee.

Before: JOYCE, BOWES and JOHNSON, JJ.

BOWES, J.:

¶ 1 Janice Rose Bianchi, a/k/a Janice Rose Ruffo ("Wife"), appeals from the order that denied her petition for a declaratory judgment against Robert Carl Bianchi, ("Husband"), directed her to execute a proposed Qualified Domestic Relations Order, ("QDRO"), and imposed sanctions against her for contempt. We reverse and remand.

¶ 2 The parties married on October 6, 1973, separated on May 12, 1994, and Husband filed for divorce on March 4, 1997. From February 22, 1977, Husband was employed by the Philadelphia Fire Department, from which he retired in 1999 with a deferred distribution pension.

¶ 3 On April 27, 1998, prior to the date of Husband's retirement, the divorce master conducted an evidentiary hearing to facilitate the equitable distribution of the parties' marital assets. The master's report recommended that the court calculate Wife's marital portion of Husband's pension benefits to equal $62,639.15, which is thirty-six percent of $173,957, the total value of the marital portion of the pension as of the date of the hearing. The master's report reads as follows:

> With regard to Husband's pension/retirement benefits, it is recommended that the marital portion thereof be distributed to the parties through the utilization of a Domestic Relations Order, Wife to receive thirty-six percent (36%) thereof ($62,639.15 ÷ $173,957.00).

Master's Report, 5/28/04, at 7.

¶ 4 Thereafter, on June 4, 1998, within ten days of the date the master filed his report, Husband demanded a *de novo* trial under Pa.R.C.P.1920.55–3(c). However, prior to trial, the parties executed a September 11, 1998 property settlement agreement, which referenced a contemplated QDRO awarding Wife thirty-six percent of Husband's pension benefits "as determined by the [m]aster in his [r]eport of May 28, 1998." Settlement Agreement, 9/11/98, at 4. The settlement agreement also established how Wife's share of the marital portion of Husband's pension would be calculated.

> It is further understood and agreed that the division of the pension/retirement benefits as set forth by the Master in his report and as agreed to by the parties in this Agreement is $62,639.15 which represents 36% of the value of the pension as of the time of the Master's hearing or 36% of $173,957.00.

*Id.* The property settlement agreement was incorporated into but not merged with the Divorce Decree, which was entered on July 21, 1999.[1]

---

1. Under the mistaken belief that the pension was administered by the Pennsylvania Municipal Retirement System (PMRS), the parties entered a stipulation and agreement directing PMRS to allocate thirty-six percent of Husband's pension accrued as of May 28, 1998, the date of the master's report, for distribution to Wife upon Husband's retirement. However, in March 2003, the Philadelphia Board of Pensions notified the parties that the stipulation was unacceptable because the PMRS did not administer Husband's retire-

¶ 5 Husband prepared the aforementioned QDRO, which directed the Philadelphia Board of Pensions to pay Wife thirty-six percent of the marital portion of Husband's pension as of May 12 1994, the date the parties separated rather than the date of the master's hearing. The proposed QDRO calculated the marital portion of Husband's pension to be $1,269 per month.

¶ 6 As Wife disagreed with how the QDRO defined the marital portion of Husband's pension, she refused to execute the order. Thereafter, Husband filed a petition for contempt against Wife for failing to comply with the terms of the property settlement agreement. Wife answered Husband's petition, arguing that the proposed QDRO did not reflect the parties' intentions as outlined in the property settlement agreement, and on July 2, 2003, Wife countered with a petition for declaratory judgment requesting that the trial court define her interest in Husband's pension as thirty-six percent of the marital portion of the pension as of May 28, 1998. In addition, Wife sought to increase her portion of Husband's pension based on post-separation increases in the pension. After a hearing, the trial court entered the September 22, 2003 order denying Wife's petition and granting Husband's petition for contempt and his request for attorneys' fees and court costs. This appeal followed.

■ ¶ 7 The primary issue Wife raises is whether her thirty-six-percent share of the marital portion of Husband's pension should be defined by the date of separation, May 12, 1994, or by the date of the master's hearing, May 28, 1998. Wife contends that she is entitled to the larger sum reached by employing the value of the pension as of the date of the master's hearing as expressly provided in the agreement. Wife also asserts that she is entitled to a portion of certain post-separation increases to Husband's pension. Finally, Wife contends that Husband improperly was granted attorneys' fees and court costs.

¶ 8 Relying upon the property settlement agreement, Wife argues that the parties intended to utilize the present value of the pension to calculate her share of the marital portion and distribute it to her upon Husband's retirement pursuant to the deferred distribution method. According to Wife, the settlement agreement clearly referenced the master's decision to calculate the marital portion of Husband's pension as of the date of the master's hearing, and award Wife $62,639.15, thirty-six percent of $173,957.00, the pension's present value.

¶ 9 Husband counters that the master did not intend to award $62,639.15 to Wife, but rather, the master simply intended to award Wife thirty-six percent of the marital portion of the pension, "and he arrived at his percentage by taking the $62,639.15 (which represented the deficiency in marital assets) and dividing it by $173,957.00 (which represented the present value of the pension as of the date of the Master's Hearing)." Accordingly, Husband concludes that the settlement agreement comports with the master's recommendations and that Wife's contrary interpretation of the agreement is inconsistent with prevailing legal authority.

¶ 10 The trial court adopted a similar conclusion, stating as follows:

> [W]hen the Master awarded [Wife] 36% of the marital portion of [Husband's] pension benefits with the City of Philadelphia Fire Department and de-

ment fund. Both parties agree that PMRS does not administer the policy and now dis-

credit the stipulation.

termined that the benefits were to be paid to [Wife] on a monthly basis effective the date of [Husband's] receipt of his benefits, the marital portion of those benefits was based on [Husband's] earnings "frozen in time" as of the date of separation. The award of retirement benefits to [Wife] based on [Husband's] salary at the date of separation comports with current case law and is not in error.

Trial Court Opinion, 12/22/03, at 8.[2]

¶ 11 In reviewing a declaratory judgment action, we are limited to determining whether the trial court clearly abused its discretion or committed an error of law. *Keating v. Keating*, 2004 PA Super 277, 855 A.2d 80. If the trial court's determination is supported by the record, we may not substitute our own judgment for that of the trial court. *Id.* "The application of the law, however, is always subject to our review." *Id.* ¶ 4. As the instant issue relates to the effect of the parties' property settlement agreement, our standard of review is as follows.

> In Pennsylvania, we enforce property settlement agreements between husband and wife in accordance with the same rules applying to contract interpretation. A court may construe or interpret a consent decree as it would a contract, but it has neither the power nor the authority to modify or vary the decree unless there has been fraud, accident or mistake.
>
> . . . .
>
> It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to

that determination if it is supported by the evidence.

*Lang v. Meske*, 850 A.2d 737, 739 (Pa.Super.2004) (internal citations omitted) (quoting *Osial v. Cook*, 803 A.2d 209, 213–214 (Pa.Super.2002)). Further, where as here, the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself. *Brosovic v. Nationwide Mut. Ins.*, 841 A.2d 1071 (Pa.Super.2004).

¶ 12 Upon review, we conclude that the trial court's determination of the parties' intent is not supported by the clear, unambiguous language of the property settlement agreement. The parties expressly employed the present value of Husband's pension as of May 28, 1998, in their calculation of Wife's share of the marital-portion, agreeing as follows:

> It is further understood and agreed that the division of the pension/retirement benefits as set forth by the Master in his report and as agreed to by the parties in this Agreement is $62,639.15 which represents 36% of the value of the pension as of the time of the Master's hearing or 36% of $173,957.00.

Property Settlement Agreement, 9/11/98, at 4 (emphasis added). In light of the unambiguous language, we are not persuaded by Husband's interpretation of the property agreement or the trial court's determination relating to the parties' intent. If the parties had, in fact, intended to calculate Wife's share of the pension by using the date of separation, the agreement would have referenced the date-of-separation figure, $147,901.00, instead of the value on the date of the master's hearing. Likewise, the lesser figure does not comport with the stated language distributing $62,639.15 of the pension to Wife.

---

2. The pages of the trial court opinion are not numbered; the cited passage appears on what would be page eight if the pages had been numbered consecutively.

Thirty-six percent of $147,901.00 is $53,244.36, substantially less than the $62,639.15 award the parties provided for in their agreement.

¶ 13 Having discerned the parties intent from the clear, unambiguous terms of the property settlement agreement, we must next address Husband's contention that this perspective is inconsistent with the prevailing legal authority, which denounces using the present value of a pension when calculating a non-participating spouse's share under the deferred distribution method. In *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984), we concluded that it was inappropriate for a trial court to employ a pension's present value in this situation. In that case, we reviewed the trial court's decision to value a pension as of the date of an actuary's report rather than the date of the parties' separation. We held that "when a deferred distribution is used, present value should not be employed because there are two many variables projected into the future for this calculation to have merit." *Id.* at 534, 481 A.2d 913. Instead, relying upon the express language of the Divorce Code, "[w]e conclude[d] that only that portion of the pension attributable to the period commencing with the marriage and ending on the date of separation is marital property within the meaning of the Divorce Code." *Id.* at 530, 481 A.2d 913 (emphasis added); *see* 23 P.S. § 401(e) renumbered 35 Pa. C.S. § 3501(a)(4).

¶ 14 While *King* precludes a court from ordering a deferred-distribution scheme that implicates non-marital property by employing the present value of a pension in calculating the non-participating spouse's share, that case has no effect on the parties' agreement in the case *sub judice*. Nothing prevented Husband and Wife from agreeing to give Wife more assets than she legally was entitled to receive, and absent fraud, accident, or mistake, the courts lack authority to interfere with the parties' stated arrangement. *See Lang, supra* (relating to court's authority to modify or vary terms of consent decree).[3] Hence, the trial court erred in denying Wife's request for a declaratory judgment defining the value of Wife's thirty-six-percent share of Husband's pension as of the date of the master's hearing, as outlined in the agreement.

■ ¶ 15 Wife's second issue relates to certain post-separation increases to Husband's pension, to which Wife contends she is entitled. It is well established that a

---

**3.** We recognize that the property settlement agreement might have been marred by a mutual mistake at its conception. "A mutual mistake is found where both parties have an erroneous belief as to a basic assumption of the contract at the time of formation which will have a material effect on the agreed exchange as to either party." JOHN EDWARD MURRAY, JR., MURRAY ON CONTRACTS § 91(E) (3d ed.1990). In forming the relevant portions of the property settlement agreement, the parties adopted the master's recommendation as it appeared in his report. However, since the master's recommendation purported to distribute non-marital property to Wife in contravention of *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984), it legally was flawed. *See* Master's Report, 5/28/98, at 4, 7 (indicating that the marital value of Husband's pension to be $173,957.00). As the record does not reveal that the parties were cognizant of this error, the subsequent agreement may have been formed on the mistaken belief that the master's recommendation conformed to legal authority.

Nevertheless, as neither party to this appeal has asserted a possible mistake in the formation of the agreement, the issue is not before us. *See Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975) (appellate courts cannot decide an issue that neither party raised, briefed or argued). *Compare Ty–Button Tie, Inc. v. Kincel & Co.*, 814 A.2d 685 (Pa.Super.2002) (we may raise issues of jurisdiction *sua sponte* ).

non-participating spouse is not entitled to increases in the participating spouse's pension plan if the increases are attributable to the efforts or contributions of the employee.[4] *Berrington v. Berrington*, 534 Pa. 393, 633 A.2d 589 (1993).

¶ 16 Herein, Wife contends that she is entitled to a thirty-six percent share of the post-separation increases to Husband's pension pursuant to *Meyer v. Meyer*, 561 Pa. 225, 749 A.2d 917 (2000). In *Meyer*, our Supreme Court addressed an equitable distribution order that considered post-separation early retirement benefits as marital property. The Court affirmed the order, holding that post-separation increases in retirement benefits must be included in the marital estate where the salient years of service included years where the marriage was intact. In that case, the husband was required to have twenty-five years of service to receive a five-year bonus. The twenty-five year period included several years in which he and his wife had been married. Thus, the Supreme Court held that "where the increased pension benefits are based on years of service, which include years of service in which the marriage was intact, the increased benefits must be included in the marital estate to the extent of their coverture fraction." *Id.* at 229, 749 A.2d at 919. Mindful of the policy underlying the Divorce Code to effectuate economic justice between the parties, the *Meyer* Court reasoned that a non-participating spouse is entitled to benefit from favorable increases to the pension that are not due to the efforts of a participating spouse. The Court stated, "Any other rule would merely provide an unearned windfall to the participant spouse." *Id.*

¶ 17 Instantly, Wife argues that she is entitled to a share of the marital portion of Husband's pension that has been enhanced due to a post-separation-cumulative-years-of-service benefit. For the following reason, we disagree.

¶ 18 In contrast to the parties in *Meyer*, Husband and Wife arranged to distribute Husband's pension in a specific manner. Under the terms of the property settlement agreement, Wife is entitled only to "[thirty-six percent]" of the value of the pension as of the date of the Master's hearing or [thirty-six percent] of $173,957.00. Property Settlement agreement, 9/11/98 at 4. The parties' agreement does not bestow to Wife any portion of the post-separation increases to Husband's pension, but rather, expressly limits Wife's share of the pension to thirty-six percent of the pension's value as of the date of the master's hearing. As nothing prevented Husband and Wife from agreeing that Wife would relinquish an asset that she would have otherwise legally been entitled to receive under a court ordered distribution, we are reluctant to modify the parties' agreement by conferring post-separation increases to Wife. Just as we cannot rely upon case law to alter the terms of the parties' agreement relating to the date of valuation, absent fraud, accident, or mistake, we equally are precluded from reforming the agreement to allow Wife to benefit from post-separation increases. *See Lang, supra.*

 ¶ 19 The final issue relates to whether the trial court abused its discretion in imposing sanctions against Wife because she refused to execute the QDRO. We conclude that the trial court's disciplinary action was not warranted in this case.

4. The post-separation increases to Husband's pension that were due to an increase in Husband's salary are attributable to Husband's efforts, and therefore, they are not marital property. *Berrington v. Berrington*, 534 Pa. 393, 633 A.2d 589 (1993); *Brown v. Brown*, 547 Pa. 360, 690 A.2d 700, (1997) (plurality).

As noted *supra*, the proposed QDRO diverged from the terms of property settlement agreement, therefore, justifying Wife's refusal to execute it.

¶ 20 For all of the foregoing reasons we reverse the trial court order that denied Wife's petition for declaratory judgment, directed Wife to sign the proposed QDRO, and imposed attorneys' fees and court costs against Wife as a penalty for her alleged contempt.

¶ 21 Order reversed. Case remanded. Jurisdiction relinquished.