J. S71015/15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| NORMAN G. LONG | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| JENNIFER V. LONG, | : | No. 341 WDA 2015 |
| | : | |
| Appellant | : | |

Appeal from the Order, January 29, 2015,
in the Court of Common Pleas of Bedford County
Civil Division at No. 813 for the year 2008

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN AND OTT, JJ.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 09, 2016**

Jennifer V. Long (hereinafter "Wife") appeals from the Bedford County

Court of Common Pleas' January 29, 2015 order denying her petition for

enforcement and contempt.  We affirm.

The trial court provided the following facts:

> On July 11, 2008 the Plaintiff, Norman George Long
> [hereinafter, "Husband"], filed for divorce against his
> wife, Defendant, Jennifer Vesta Long.    On
> February 7, 2009 the parties signed an agreement
> prepared by [Husband's] counsel.    On August 28,
> 2009 this Court entered a decree of divorce.    The
> order provided, "the Settlement Agreement signed
> by the parties February 7, 2009, is hereby
> incorporated without merger."    On July 26, 2012
> [Wife] filed a petition to enforce agreement, and for
> contempt.    The petition alleged the existence of an
> executed memorandum of understanding.    An
> unexecuted copy of this memorandum of
> understanding was attached to the petition.    The
> provisions contained in this unsigned memorandum

stated that, ". . . It is also agreed that should Norman Long place said property or desire to sell said property prior to the five years as mentioned above, he agrees to provide Jennifer Long with one-half (1/2) of the market value of said property the first year; 40% of the value the second year; 30% the third year; 20% the fourth year; and 10% the fifth year." The real estate in question situated in Mann Township of [Bedford County] was transferred to the Plaintiff in March of 2009. Throughout the divorce proceedings [Husband] was represented by counsel and [Wife] represented herself.

In March of 2012 [Husband] sold the real estate for $300,000.00 to an unrelated party. [Wife's] petition requested an amount in excess of $90,000.00 plus interest, counsel fees, and costs. At the scheduled conference on August 27, 2012, a hearing was scheduled for January 18, 2013, and the Court ordered the proceeds from the sale of the real estate be escrowed. On October 17, 2012 [Wife] filed a motion to enter judgment, enforce court order, contempt, and [] compel production. Argument was scheduled for December 3, 2012. At this hearing it was determined that the real estate proceeds were in an account out of state solely in control of [Husband]. The Court ordered again these funds be escrowed and specified it be in an account under the control of [Husband's] counsel. The Court also directed certain documents from the real estate closing. On January 7, 2013 the Court, at [Wife's] request, scheduled a deposition of [Husband] for January 10, 2013. On January 14, 2013 [Wife] filed a motion for summary judgment, a petition for contempt, counsel fees, and costs.

At the hearing, [Wife] offered a number of affidavits and [Husband's] deposition. [Husband's] counsel offered her computerized notes from her office. Two of the affidavits were from individuals whom [Wife] showed the real estate to in 2010 for the purpose of selling it to them. Neither of these persons purchased the real estate. There was also an

affidavit from the closing attorney which indicated he had not received any information about an agreement regarding [Wife] receiving a portion of the proceeds. [Husband's] deposition was taken on January 14, 2013. During the deposition [Husband] was asked if he had ever seen the memorandum of understanding which is the basis of Wife's petition. [Husband], when asked if he had ever seen the memorandum of understanding, replied he had not. [Husband] also denied that the memorandum of understanding was ever presented to him as part of the separation agreement. [Husband] also denied that he ever saw or signed an alternate version of the memorandum of understanding that was shown to him. [Husband] did agree that he and [Wife] had discussed a number of times sharing the value of the Mann Township, Bedford County real estate. [Husband] was asked if he ever agreed to such a division. [Husband] responded, ". . . well, we talked about it and agreed to some of it, yes." When asked about any percentages agreed to [Husband] responded, "about percentages? Well, from like I said December 20, 2007, if I sold it within one year of that she'd get 50% of the net proceeds, two years after that 40%, three years after that 30%, four years after that 20%, and five years - - - within five years 10%.

Trial court opinion, 4/15/13 at 1-3 (citations to transcript omitted).

At the hearing on June 25, 2014, [Wife] testified that she was a Nurse Anesthetist and the parties separated in 2007. Between the separation date and 2009 the parties met on a number of occasions at a Maryland resort to discuss their separation and divorce. At some point [Wife] stated [Husband] wanted her to sign a marital settlement agreement prepared by his attorney. At that point [Wife] says she began discussing with [Husband] that if the marital real estate was sold that for a period of time she would receive a portion of the market value. [Wife] had produced two unsigned versions of the agreement. [Wife], in her deposition, stated that the agreement described in Transcript exhibit #13 was

signed by the parties, but [Husband] has consistently denied this and a signed copy has never been produced. [Wife] stated that she kept her copy of the signed agreement in her car and it was lost when her son wrecked the vehicle. In his deposition [Husband] concedes at some point prior to signing the marital settlement agreement prepared by his lawyer he had agreed to a percentage distribution if the house was sold within five years of the separation date. [Wife] in her testimony also indicated this agreement was reached before she signed the marital settlement agreement. When asked what relief she was requesting from the Court her response was "to honor the agreement that my husband and I had prior to signing the divorce agreement . . ." The marital settlement agreement signed by the parties is dated February 7, 2009, and is signed by both parties. Paragraph six of the agreement provides that the real estate will be distributed to [Husband] and he will be responsible for the mortgage. There is no mention of any distribution to [Wife] if the house is sold. At the hearing on June 25, 2014 counsel for [Wife] readmitted the notes taken by [Husband's] attorney and her staff during the divorce. The notes for March 18, 2009 indicate [Husband] delivered the "signed marital settlement agreement" to the attorney's office. The notes also provide that [Husband] is "to talk to [Wife] about when she can sign the deed." [Wife] concedes she read the marital settlement agreement before she signed it. [Wife] also concedes that the agreement did not provide for any payment. "No they didn't stop me, but when I read it, it clearly said that I would be signing off on the house." The office notes from [Husband's] attorney indicated [Wife] appeared on March 25, 2009 to sign the deed. The deed was dated and acknowledged on March 25, 2009. [Wife] stated she did not speak to [Husband's] attorney that date, but rather met with a clerk in the attorney's office. It appears [that this was the] same clerk who prepared the notes contained in [Husband's] exhibit #1, 12/3/12. [Wife] states that she asked this clerk whether signing the deed would affect the

arrangement she had with [Husband] to receive a portion of the value of the property if it was sold. The notes written by the clerk state[], "*[Wife] in this date to sign deed, consent and waiver, - told her I would mail her cc's of the decree and marital settlement agreement when docs rec'd back from [Husband]. [Wife] asked if she signed deed will that null and void the agreement she just signed that says [Husband] gets the residence, but if he sells in the next five years he is to give her 30% of profit. I said signing the deed does not null and void the marital settlement agreement she signed.*" On that same date [Husband] was contacted and was told about [Wife's] statement about the 30%. The note provides, "*he said that is an agreement they made verbally between each other.*" [Wife] stated several times she only signed the deed because of the statement made by the clerk to her in [Husband's] attorney's office.

Trial court opinion, 1/29/15 at 2-4 (emphasis in original).

Wife raises the following issues on appeal:

1. Did the Court below err in omitting to enforce (or to find the Plaintiff-Husband in contempt for breach of) the agreement, whether oral or reduced to writing and signed, between the Plaintiff-Husband and the Defendant-Wife, pertaining to the Defendant-Wife's percentage share in the proceeds of sale of the marital residence, notwithstanding the subsequent marital settlement agreement, which did not supersede the prior agreement, nor was the prior agreement subsumed therein, and the Defendant-Wife proved her claim by the requisite standard?

2. Did the Court below err in omitting to grant relief to the Defendant-Wife for the material misrepresentation by the Plaintiff-Husband and/or the agents and representatives of the Plaintiff-Husband incident to the execution of the marital settlement agreement, as to the

validity of the antecedent agreement, whether oral or reduced to writing and signed, pertaining to the Defendant-Wife's percentage share in the proceeds of sale of marital real estate, whether inasmuch as the Defendant-Wife proved by clear and convincing evidence the elements of the misrepresentation, the materiality of the misrepresentation, the knowing or reckless falsity of the misrepresentation, justifiable reliance on the misrepresentation, and the resulting injury proximately caused by such reliance?

3. Did the Court below abuse its discretion in omitting to award counsel fees to the Defendant-Wife for the Plaintiff-Husband's conduct during the pendency of the matter was obdurate and/or vexatious relating to the Defendant-Wife's percentage share from the sale of the marital real estate pursuant to the agreement, whether oral or written, between the Plaintiff-Husband and the Defendant-Wife, which antedated the marital settlement agreement?

Wife's brief at 5-6.

Under her first issue, Wife avers that the memorandum of understanding is binding, despite language to the contrary found in the marriage settlement agreement (hereinafter "MSA"). Specifically, Wife claims that she is entitled to a percentage of the proceeds from the sale of the marital real estate pursuant to an agreement with Husband that enumerated the percentage of the proceeds Wife was due to receive based on when Husband sold the marital real estate.

When reviewing a MSA, we are held to the following standard:

The following legal principles are applicable in the review of a marriage settlement agreement. "A marital settlement agreement incorporated but not merged into the divorce decree survives the decree and is enforceable at law or equity. A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise." *Stamerro v. Stamerro*, 889 A.2d 1251, 1258 (Pa.Super. 2005) (citations and quotations omitted).

In conducting our review of the court's holding as to the marital settlement agreement, we remain cognizant of the following:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is de novo and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

*Id.* at 1257-1258 (citations and quotations omitted).

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

*Id.* at 1257 (citations and quotations omitted).

*Kraisinger v. Kraisinger*, 928 A.2d 333, 339 (Pa.Super. 2007).

A property settlement agreement between spouses is interpreted "in accordance with the same rules applying to contract interpretation." ***Bianchi v. Bianchi***, 859 A.2d 511, 515 (Pa.Super. 2004). The goal of contract interpretation is, "to ascertain and give effect to the parties' intent." ***Id.*** Furthermore, where, "the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself." ***Id.*** The parties' intent, "must be ascertained from the entire instrument," and, "effect must be given to each part of a contract." ***Purdy v. Purdy***, 715 A.2d 473, 475 (Pa.Super. 1998) (citation omitted), ***appeal denied***, 794 A.2d 363 (Pa. 1999).

In the instant case, Wife seeks to have a memorandum of understanding enforced. The memorandum of understanding predates the MSA and provides the following relevant terms:

> Jennifer Long shall retain her interest in the Artemas Property; and that
>
> It is agreed that Jennifer Long shall transfer her interest in the Artemas Property to Norman Long at the end of 5 years from the date of this agreement.
>
> It is also agreed that should Norman Long place said property or desire to sell said property prior to the within these 5 years as mentioned above, he agrees to provide Jennifer Long with one half (1/2) of the market value of said property the first year; 40% of the value the second year; 30% the third year; 20% the fourth year and 10% the fifth year.

Memorandum of Understanding, Ex. 1, 1/23/13.

This agreement predated the MSA, which Husband and Wife executed on February 7, 2009. The MSA provides, in relevant part:

**5.** **MUTUAL RELEASES**

> Husband and Wife each does hereby mutually remise, release, quit claim and forever discharge the other and the estate of such other, for all purposes whatsoever, of and from any and all rights, title, interests or claims in or against the property of the other or against the estate of such other which he or she now has or at any time hereafter may have, whether arising out of any former acts, contracts or liabilities of such other or by way of dower or courtesy, family exemption or similar allowances, or under the intestate laws, or the right to take against the spouse's will.

. . . .

> c.     Real Property.

> > Husband and Wife acknowledge that they are the joint owners of real property known as 250 Clingerman Road, Artemas, Pennsylvania 17211, and hereinafter referred to as the "marital residence." Wife agrees to waive and convey to Husband any and all right, title and interest she may have in the marital residence without further claim against Husband. Husband agrees that within six (6) months of the date of signing this Agreement he will either assume or refinance the parties' mortgage with Wells Fargo Bank and thereby obtain release of Wife as obligor thereon. Pending refinance of the marital residence as aforesaid, Husband shall have

> exclusive occupancy of the residence and he shall pay any and all expenses associated with ownership of the home, including mortgage payments, taxes, fire and casualty insurance, repairs, upkeep and/or improvements and utilities, without contribution by Wife.

MSA, 2/7/09 at 2-3.

By the plain language of the MSA, the intent of the parties is clearly manifested--the parties intended to have the MSA supersede any previous agreement or contract. The MSA also contained clauses in which the parties stipulated that they,

> each had full and fair opportunity to obtain independent legal advice. . . . Husband and Wife further declare that he and she now execute this Agreement freely and voluntarily, having obtained such knowledge and disclosure of his or her legal rights and obligations, and that he and she acknowledge that this Agreement is fair and equitable and is not the result of any fraud, coercion, duress, undue influence or collusion.

*Id.* at 1-2.

Indeed, Wife acknowledged that she read the MSA prior to signing it. She further acknowledged that she understood the implications of signing the MSA in relation to her interest in the marital real estate:

> THE WITNESS: No, they didn't stop me from reading, but when I read it, it clearly said that I would be signing off on all rights to the house. So, I said, if I sign this, does this mean that I don't have any –

> THE COURT: So, you, in fact, read the agreement and read where it said that signing off on this you lose all your rights to the house.
>
> THE WITNESS: Right.
>
> THE COURT: You read that?
>
> THE WITNESS: Yes.
>
> THE COURT: And signed it anyway?
>
> THE WITNESS: Because they told me it wouldn't nullify the side agreement that I had with Norm.

Notes of testimony, 6/25/14 at 26.

Based on our careful review of the record, we find the record supports the trial court's finding that both parties signed the MSA with the intention that Wife would relinquish any interest she had in the marital real estate. Therefore, Wife's first issue is without merit.

In Wife's second issue for our review, she avers that Husband's agents, specifically a member of Husband's counsel's staff, intentionally misrepresented the consequences of signing the MSA. Specifically, Wife claims that Husband "perpetuated a fraud by the misrepresentations" to Wife, and as a result, the MSA should be invalidated. (**See** Wife's brief at 25-26.)

We are bound by the trial court's factual determinations, so long as they are supported by the record and Husband did not perpetuate any fraud. Here, after a careful review of the record, we find that the trial court's factual determinations are supported by the record. Therefore, we will

affirm on the basis of the trial court's opinion for Wife's second issue. (**See** trial court opinion, 1/29/15 at 5-7.)

Finally, in her third issue on appeal, Wife avers that the trial court abused its discretion by failing to award counsel fees. The trial court has the power to award counsel fees, "if, at any time, a party has failed to comply with an order of equitable distribution . . ." 23 Pa.C.S.A. § 3502(e)(7). Since we have determined that Husband has not violated any terms of the MSA, and because counsel fees are an appropriate sanction only to enforce agreements between parties, we find that the trial court did not abuse its discretion by failing to award Wife counsel fees. **See Miller v. Miller**, 983 A.2d 736, 743-744 (Pa.Super. 2009), **appeal denied**, 998 A.2d 961 (Pa. 2010).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2016

[APPENDIX 2.2]

IN THE COURT OF COMMON PLEAS, BEDFORD COUNTY, PENNSYLVANIA

NORMAN GEORGE LONG　　　　　: No. 813 for the year 2008

　　　　Plaintiff　　　　　　　　:

　　vs.　　　　　　　　　　　　: Civil Action – Law

JENNIFER VESTA LONG　　　　　:

　　　　Defendant　　　　　　　: In Divorce

## MEMORANDUM OPINION

AND NOW, January 29, 2015, after hearing, the Court enters the following Memorandum Opinion:

On June 25, 2014, and October 29, 2014 hearings were held on the Defendant's petition to enforce and petition for contempt. Much of the relevant history of the case was recited in the Court's Memorandum Opinion of April 15, 2013 regarding the Defendant's motion for summary judgment. The Court's order of that same date denied the Defendant's motion for summary judgment. A copy of said Opinion is attached hereto. Subsequent to the entry of the above Memorandum Opinion the Defendant filed supplemental pleadings which raised additional claims. These claims were as follows:

[33]

1

1. The parties had entered into an oral agreement concerning a sale of the real property. The original pleading claimed only a signed agreement existed in addition to the marital settlement agreement filed with the divorce.

2. The Plaintiff or his agents facilitated an intentional misrepresentation on the Defendant resulting in her transfer of her interest in the real estate.

3. The Defendant is entitled to counsel fees as a result of the breach of the agreement.

At the hearing on June 25, 2014 the Defendant testified that she was a Nurse Anesthetist and the parties separated in 2007. Between the separation date and 2009 the parties met on a number of occasions at a Maryland resort to discuss their separation and divorce. At some point the Defendant stated the Plaintiff, Norman George Long, wanted her to sign a marital settlement agreement prepared by his attorney. At that point the Defendant, Jennifer Vesta Long, says she began discussing with the Plaintiff that if the marital real estate was sold that for a period of time she would receive a portion of the market value. The Defendant had produced two unsigned versions of the agreement. (Transcript exhibit #12, 1/10/13, and Transcript exhibit #13, 1/10/13). The Defendant, in her deposition, stated that the agreement described in Transcript exhibit #13 was signed by the parties, but the Plaintiff, Norman George Long, has consistently denied this and a signed copy has never been produced. The Defendant stated that she kept her copy of the signed agreement in her

34

car and it was lost when her son wrecked the vehicle. In his deposition the Plaintiff concedes at some point prior to signing the marital settlement agreement prepared by his lawyer he had agreed to a percentage distribution if the house was sold within five years of the separation date. The Defendant in her testimony also indicated this agreement was reached before she signed the marital settlement agreement. When asked what relief she was requesting from the Court her response was "to honor the agreement that my husband and I had prior to signing the divorce agreement . . . " (T. 6/25/14, page 13, lines 22-23). The marital settlement agreement signed by the parties is dated February 7, 2009, and is signed by both parties. Paragraph six of the agreement provides that the real estate will be distributed to the Plaintiff and he will be responsible for the mortgage. There is no mention of any distribution to the Defendant if the house is sold. At the hearing on June 25, 2014 counsel for the Defendant readmitted the notes taken by the Plaintiff's attorney and her staff during the divorce. The notes for March 18, 2009 indicate the Plaintiff delivered the "signed marital settlement agreement" to the attorney's office. (Plaintiff's exhibit #1, 12/3/12). The notes also provide that the Plaintiff is "to talk to ap about when she can sign the deed." (Plaintiff's exhibit #1, 12/3/12). The Defendant concedes she read the marital settlement agreement before she signed it. The Defendant also concedes that the agreement did not provide for any payment. "No they didn't stop me, but when I read it, it clearly said that I would be signing off on the house." The office notes from the Plaintiff's attorney indicated the Defendant appeared on March 25, 2009 to sign the deed. The deed was dated and acknowledged on March 25, 2009. The Defendant stated she did not speak to the Plaintiff's attorney that date, but rather met with a

[35]

3

clerk in the attorney's office. It appears it was this same clerk who prepared the notes contained in the Plaintiff's exhibit #1, 12/3/12. The Defendant states that she asked this clerk whether signing the deed would affect the arrangement she had with the Plaintiff to receive a portion of the value of the property if it was sold. The notes written by the clerk states, "*ap in this date to sign deed, consent and waiver, - told her I would mail her cc's of the decree and marital settlement agreement when docs rec'd back from ct. Ap asked if she signed deed will that null and void the agreement she just signed that says cl gets the residence, but if he sells in the next five years he is to give her 30% of profit. I said signing the deed does not null and void the marital settlement agreement she signed*". (Plaintiff's exhibit #1, 12/3/12). On that same date the Plaintiff was contacted and was told about Defendant's statement about the 30%. The note provides, "*he said that is an agreement they made verbally between each other.*" (Plaintiff's exhibit 1, 12312). The Defendant stated several times she only signed the deed because of the statement made by the clerk to her in the Plaintiff's attorney's office.

The record in the case supports that the marital settlement agreement was signed prior to the deed and was not signed at the Plaintiff's attorney's office. The Defendant has established that an oral agreement was entered into by the parties prior to signing the marital settlement agreement that she would receive a portion of the "profits from the sale of the real estate if that was within five years of the separation date." However, the Defendant has not provided any credible evidence of the existence of a written agreement. The Plaintiff denies it and the Defendant's explanation of how this

[36]

4

valuable document was lost is difficult for the Court to accept. The very substance of the unsigned copies raises issues why the Plaintiff would be induced to sign them. Neither takes into account the mortgage payments he had made solely since 2007. Further, when confronted about agreement in 2009, the Plaintiff conceded a verbal not a written agreement. Regarding the oral agreement, the records supports it was made to induce the Defendant to sign the marital settlement agreement which she read and was aware it did not include the language she requested. Further, the agreement contained a mutual release provision which mutually released and discharged the other from any claims in or against the property of the other arising out of contracts. Thus by signing the marital settlement agreement she abrogated the oral agreement she had made immediately prior to executing it. Of course there can be an oral modification of any agreement, but that oral modification must be proven by clear and convincing evidence. Pellegrene v. Luther, 169 A.2d 298 (Pa 1961). As noted, no evidence was presented of any further pledge or agreement about claiming the value of the real estate after the agreement was signed.

The Defendant has raised the issue of misrepresentation by the attorney's staff in inducing the execution of the deed. The record is bare of any evidence that the clerk was aware of the oral agreement made by the parties prior to execution of the marital settlement agreement. There is also little evidence the clerk was aware of the terms of the marital settlement agreement when the deed was executed by the Defendant. If it was the clerk that called the Plaintiff after the deed was signed the notes indicate at the time of the phone call the caller was aware of the terms of the marital settlement

[37]
5

agreement. However, the record is not clear who called the Plaintiff. In any event, the Defendant could not have been wrongfully induced to sign the deed because by the date she signed the deed in the attorney's office she had already obligated herself to sign the deed by the terms of the marital settlement agreement. Whether or not she had an agreement to receive part of value of the real estate, she had a contractual duty to transfer her interest to the Plaintiff. The issue remains whether the Plaintiff's statement to the Defendant to induce her signature of the marital settlement agreement was a material misrepresentation that would render the marital settlement agreement voidable. It can be argued persuasively the Plaintiff misrepresented to the Defendant to contents of the agreement. The elements of misrepresentation must be proven by clear and convincing evidence. Those elements are: 1.) a misrepresentation; 2.) which is material to the transaction; 3.) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; 4.) with the intent of misleading another in relying on it; 5.) justifiable reliance on the misrepresentation; and 6.) resulting injury proximately caused by reliance. Bortz v. Noon, 729 A.2d 555 (Pa 1999).

The Defendant testified she had a full and adequate opportunity to review the agreement before signing it. Her testimony at the hearing would indicate she signed the marital settlement agreement at the attorney's office but that is not consistent with the other evidence. The Defendant frequently in her testimony confused the deed and the marital settlement agreement. The Court relies on the office notes as being a more reliable indication of the sequence of events in 2009. Having reviewed

[38]
6

the agreement herself, and being aware of its' contents, she would not have been justified in relying on the Plaintiff's statements. <u>Porreco v. Porreco</u>, 811 A.2d 566 (Pa 2002).

Based on the above findings the Court finds no merit in the Defendant's petition and denies her request for enforcement of agreement and counsel fees.

By the Court:

_Thos S. Ling_____ P.J.

Counsel:

For the Plaintiff:
    Kristin M. Banasick, Esquire

For the Defendant:
    Thomas M. Dickey, Esquire

[39]