J-A21001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| CHERI SWAN | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAVID SWAN | : | |
| | : | |
| Appellant | : | No. 620 EDA 2020 |

Appeal from the Order Entered February 11, 2020
In the Court of Common Pleas of Northampton County Civil Division at
No(s):  No. C-48-CV-2016-10190

BEFORE:  LAZARUS, J., DUBOW, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY LAZARUS, J.:                    **FILED NOVEMBER 09, 2020**

David Swan (Husband) appeals from the order, entered in the Court of Common Pleas of Northampton County, granting in part Cheri Swan's (Wife) petition for special relief.  Despite a counseled property settlement agreement (Agreement), the parties dispute what should be a straightforward term of the contract—the "termination date" of Husband's alimony obligation.  Husband argues his obligation terminates at his 65th birthday, January 16, 2027, or upon his death, whichever occurs first.  Wife contends the Agreement requires alimony continue until Husband's 65th birthday, regardless if he dies before that time; she contends the terms of the Agreement requiring Husband secure that obligation with a life insurance policy and provide annual proof of such, as well as subsequent terms of the Agreement, support that interpretation. The trial court agreed with Wife.  After careful review, we affirm.

The parties were married on September 17, 1988. Wife filed a complaint in divorce on November 23, 2016. On June 18, 2018, the parties appeared before a master, both with counsel. On that date, the parties entered into their Agreement, resolving issues of equitable distribution and alimony. Counsel for the parties[1] memorialized the Agreement on the record before the master, and a transcript of the proceedings was filed on June 20, 2018. At the conclusion of the hearing, the parties affirmed on the record that they agreed with the terms and agreed to be bound by those terms. *See* N.T. Hearing, 6/18/18, at 19-25. On June 21, 2018, the court entered an order granting the parties a divorce and incorporating the transcript from the master's hearing.

The relevant portions of the Agreement, memorialized on the record, read as follows:

> **Attorney Margle**: Number 1, beginning July 1st, 2018, husband shall pay to wife the sum of $10,000 per month as non-modifiable alimony, which shall be considered deductible by husband and includable in wife's income taxes pursuant to federal law. Alimony, again, shall be non-modifiable, **but shall terminable [sic] in the event of wife's cohabitation *or* wife's remarriage *or* the death of either party**.

---

[1] At the time of the master's hearing, Husband was represented by Stanley J. Margel, III, Esquire, and Wife was represented by Abele A. Iacobelli, Esquire. Attorney Iacobelli represents Wife on appeal. Attorney Margel withdrew his appearance; on August 9, 2018, James L. Reich, Esquire, entered his appearance on behalf of Husband. Attorney Reich subsequently withdrew his appearance, and, on August 16, 2019, Joseph Holko, Esquire, entered his appearance on behalf of Husband. Attorney Holko represents Husband on appeal.

> The duration of that alimony shall be until wife turns 65, and for the record her birthday is November 16, 1964.

***Id.*** at 3 (emphasis added).

At that point, the parties requested to go off the record. Upon return, the following exchange occurred:

> **THE MASTER:** Attorney Margle, you want to make a modification as to what you just said.
>
> **MR. MARGLE: Yes. I do. The duration of the alimony shall be until husband turns age 65** [January 16, 2027], and that husband agrees to secure the payment of post-divorce alimony with his existing life insurance policy, but that wife's interest as a beneficiary in that policy shall be commensurate with any unpaid alimony only. . . Husband was born on January 16, 1962. He is presently 56 years of age.

***Id.*** at 3-4 (emphasis added).[2] Counsel for the parties continued:

> **MR. IACOBELLI:** The second point of clarification, as it relates to the life insurance policy to secure alimony, that is a Northwestern Mutual policy ending in 8761. And my notes reflect that that is a $2 million term policy. Just to make that—
>
> **MR. MARGLE:** Northwestern. What's the number?
>
> **MR. IACOBELLI:** 8761 are the last four digits.
>
> **THE MASTER:** Attorney Margie, there's an agreement that that will be the policy that will be used to fund—or to—

---

[2] We note that Attorney Margle's modification pertained to the statement that the duration of alimony was until Wife reached aged 65; Attorney Margle clarified the duration was until *Husband* reached age 65. That modification did *not* alter the termination provisions: Wife's cohabitation, Wife' remarriage, or *the death of either party*. It is only from the subsequent terms of the Agreement placed on the record that we find support for the court's finding that the parties intended the duration of the alimony obligation to continue until January 16, 2027. This could have been clarified with little effort.

**MR. MARGLE:** Secure the alimony.

**THE MASTER:** To secure the alimony obligation?

**MR. MARGLE:** Yes. Again, only to the extent of any unpaid alimony. The balance of any payments under that policy will go to other beneficiaries as set forth in the policy.

**MR. IACOBELLI:** That's fine. **I would also ask that on December 31st or January 1st of each year there is proof that my client is listed as the beneficiary in the amount sufficient to cover the remaining alimony obligation through age 65.**

**THE MASTER: Let's stop there. *Attorney Margle, that's acceptable, correct?***

**MR. MARGLE: *Yes, it is.***

*Id.* at 14-16 (emphasis added).

One year later, on June 21, 2019, Wife's counsel sent a letter to both Husband and his attorney requesting Husband provide confirmation that he had secured a life insurance policy in accordance with the Agreement. Receiving no response, Wife filed a petition to enforce the Agreement on July 17, 2019. In her petition, Wife sought, *inter alia*, an order directing Husband to comply with the terms of the Agreement. Petition to Enforce Property Settlement Agreement, 7/17/19, at ¶¶ 7-11. In particular, Wife requested the trial court order Husband to provide "[Wife], within ten (10) days from the date of the Order, written proof and confirmation that he has secured a life insurance policy, naming her as the beneficiary in the amount **sufficient to cover the remaining alimony obligation through age 65**." *Id.* at ¶ 11 (emphasis added). This language is taken directly from the language of the Agreement. *See* N.T. Hearing, *supra* at 14-16.

Wife filed a brief in support of her petition on October 10, 2019, and Husband filed a memorandum in opposition on October 30, 2019.[3] On February 11, 2020, the trial court entered the following order:

> NOW THIS 11th day of February 2020, in accordance with the following Opinion, the "Petition for Enforcement of Property Settlement Agreement Filed on Behalf of Petitioner, Cheri Swan" is GRANTED in part. Specifically, within ten (10) days of the date of this Order, Defendant, David Swan, is hereby ORDERED to provide Plaintiff, Cheri Swan, written proof and confirmation that he has secured a life insurance policy, naming her as the beneficiary in the amount sufficient to cover the **remaining obligation through January 16, 2027, as more fully set forth in the attached Opinion.** A copy of this Order and supporting Opinion is to be served upon counsel for the parties, as required by law.

Order, 2/11/20 (emphasis added). Husband filed a timely appeal on February 13, 2020. Both the trial court and Husband complied with Pa.R.A.P. 1925. Husband raises the following issue for our review:

> Whether the express terms of the parties' property settlement agreement terminate Husband's obligation to pay alimony to Wife upon Wife's cohabitation, Wife's remarriage, or the death of either Husband or Wife, and thereby terminate the obligation to pay alimony in the event Husband were to die before reaching the age of 65?

Appellant's Brief, at 5.

Settlement agreements are subject to contract principles. *See Sams v. Sams*, 808 A.2d 206, 210 (Pa. Super. 2002). "In determining whether the

---

[3] The trial court notes that on November 12, 2019, Attorney Iacobelli filed a petition to withdraw as counsel for Wife, which the trial court granted. On February 24, 2020, Attorney Iacobelli filed a praecipe for entry of appearance on behalf of Wife.

trial court properly applied contract principles, the reviewing Court must decide, based on all the evidence, whether the trial court committed an error of law or abuse of discretion." ***Id.*** (citation omitted). We have said an abuse of discretion

> is synonymous with a failure to exercise [] sound, reasonable, and legal discretion. It is a strict legal term indicating that an appellate court is of the opinion that there was commission of an error of law by the trial court. It does not imply intentional wrong or bad faith, or misconduct, nor any reflection on the judge but means the clearly erroneous conclusion and judgment—one that is clearly against logic and the effect of such facts as are presented in support of the application or against the reasonable and probable deductions to be drawn from the facts disclosed upon the hearing; an improvident exercise of discretion; an error of law.

***Adams v. Adams***, 848 A.2d 991, 993 (Pa. Super. 2004) (citation omitted). In conducting appellate review, "[w]e will not usurp the trial court's fact-finding function." ***Stackhouse v. Zaretsky***, 900 A.2d 383, 386 (Pa. Super. 2006) (citations omitted). ***See also Lewis v. Lewis***, 234 A.3d 706 (Pa. Super. 2020).

In reviewing the trial court's interpretation of the Agreement, we remain cognizant of the following:

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is de novo and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

***Id.*** at 1257–58 (citations and quotations omitted).

- 6 -

The goal of contract interpretation is, "to ascertain and give effect to the parties' intent." ***Bianchi v. Bianchi***, 859 A.2d 511, 515 (Pa. Super. 2004). Furthermore, where, "the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself." ***Id***. The parties' intent "must be ascertained from the entire instrument," and, "effect must be given to each part of a contract." ***Purdy v. Purdy***, 715 A.2d 473, 475 (Pa. Super. 1998) (citation omitted).

Here, Husband argues the express language of the Agreement provides that the alimony obligation terminates upon "the death of either party," and, therefore, were his death to occur prior to his reaching age 65, on January 16, 2027, the alimony obligation would cease. Appellant's Brief, at 10. Wife contends the subsequent terms to the Agreement clarified that Husband's obligation continued to January 16, 2027, whether he died before that date or not, and Husband has not established that the trial court erred or abused its discretion. Appellee's Brief, at 11. We agree.[4]

In the latter portion of the transcript, Wife's counsel requested yearly proof that Wife be listed as a beneficiary on Husband's insurance policy in the amount sufficient *to cover the remaining alimony obligation through age 65.* The amount, of course, would decrease by $120,000 each year. Further, at that point the master stopped the discussion to ask Husband's counsel if that

---

[4] As we read this Agreement, were Husband's death to occur in 2020, Wife would be entitled to collect what amounts to six more years of alimony ($720,000). At that point, Wife would also be free to cohabitate or remarry.

was acceptable. Husband's counsel replied, "Yes, it is." N.T. Hearing *supra* at 16. From this language, the trial court determined that the parties intended that the duration of Husband's alimony obligation extended to January 16, 2027, and that Husband was obligated to secure that obligation with a life insurance policy to protect Wife's interest for that specified term. *Bianchi*, *supra*. The court reasoned as follows:

> Given the language of the Agreement, together with all of the factual circumstances that: 1) Husband promised to pay alimony to Wife in the amount of $10,000 per month, 2) Husband was 56 years old at the time of the Agreement, 3) a $2 million term life insurance policy was chosen to secure the agreed-upon alimony payments, and 4) annual proof was required that Husband's policy would secure remaining alimony until he turned 65, it is clear that the parties intended for the indicated policy to secure the post-divorce alimony obligation, which was to span the course of approximately 8 years and 7 months from the time the Agreement was placed on the record. [. . . ] The parties to a contract owe one another a duty of good faith and fair dealing. [] Accordingly, upon entering the Agreement, it is reasonable to infer that Husband intended to remain current on the required monthly alimony obligation, and that the life insurance policy would serve as security for an amount sufficient to cover Husband's remaining alimony obligation through the entirety of the specified term— "through the age 65."

Trial Court Opinion, 2/11/20, at 8. We agree, and although the court did not state as much, it is clear that the subsequent terms pertained to and modified that portion of the termination clause that would have ended the obligation at Husband's death. *See Vaccarello v. Vaccarello*, 757 A.2d 909, 914 (Pa. 2000) (scope of agreement is determined by intention of parties as reflected in agreement itself and surrounding circumstances, including subsequent

conduct of parties).  This is the more rational interpretation when we read the Agreement as a whole.  ***See Huegel v. Mifflin Const. Co., Inc.***, 796 A.3d 350, 354 (Pa. Super. 2002), quoting ***Lower Frederick Township v. Clemmer***, 543 A.2d 502, 510 (Pa. 1988) (plurality opinion) (intention must be ascertained from entire instrument).

We find no error or abuse of discretion.  ***Adams***, ***supra***.  Accordingly, we affirm the trial court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/9/20