J-A14042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| JILL WEIDLE TAYLOR CHERKAS, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID L. CHERKAS, | |
| Appellant | No. 2249 EDA 2016 |

Appeal from the Order Entered June 14, 2016
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 2013-08885

BEFORE:  BENDER, P.J.E., BOWES and SHOGAN, JJ.

MEMORANDUM BY SHOGAN, J.;                **FILED AUGUST 25, 2017**

Appellant-Defendant, David L. Cherkas ("Husband") appeals from the June 14, 2016 order of the Montgomery County Court of Common Pleas.  We affirm.

The trial court summarized the facts and relevant procedural history of the case as follows:

> The parties in this matter were married in 2005, and separated in 2011.  They have one [daughter], . . . referred to in this opinion as M.C.[]  On March 22, 2011, the parties entered into a property settlement agreement [("PSA")].  On June 24, 2013, the parties entered into a supplemental property settlement agreement [("SPSA")].  On September [10], 2013, the court issued a divorce decree in this matter which incorporated by reference both the March 22, 2011 [PSA], and the June 24, 2013 [SPSA].
>
> On April 10, 2015, Plaintiff/Appellee (hereinafter "[Wife]") filed a Motion to Enforce Marital Settlement Agreement wherein, inter alia, [Wife] alleged that [Husband] failed to make required

support payments pursuant to paragraph 3 of the June 24, 2013 [SPSA]. On May 1, 2015, [Husband] filed an Answer and New Matter to Motion to Enforce Marital Settlement Agreement wherein, inter alia, [Husband] requested the court [to] modify the monthly support provision of the March 22, 2011 [PSA].

On November 6, 2015, the court held the first of two hearings on [Wife's] Motion and [Husband's] Answer and New Matter.

Trial Court Opinion, 10/6/16, at 1–2. The court held a second hearing on May 4, 2016. On June 14, 2016, the trial court granted Wife's motion and directed that Husband shall continue to pay monthly unallocated support of $3,000. The trial court also granted Husband's motion in part and concluded that while the PSA does **permit** a downward modification of Husband's support obligation, a downward modification was not warranted. Order, 6/14/16, at 1–2.

On July 12, 2016, Husband filed a notice of appeal from the June 14, 2016 order. Both Husband and the trial court complied with Pa.R.A.P. 1925. Wife has not filed a brief and did not participate in oral argument.

Husband presents the following issues on appeal:

I. Did the Trial Court abuse its discretion in considering the Pennsylvania Support Guidelines to determine Husband's support obligation above the amount of his child support obligation when the parties are already divorced and alimony *pendente lite* is not applicable?

II. Did the Trial Court abuse its discretion when it failed to find that Husband was entitled to a downward support modification where the Agreement explicitly provides that there will be a downward modification of his support obligation if, among other things, Husband's income decreased below $500,000 a year?

III.    Did the Trial Court err in finding that Wife is not required
        to demonstrate "need" to continue receiving her share of
        the $3,000.00 unallocated monthly support amount?

Husband's Brief at 6 (*verbatim*).  We address issues I and II together.

"It is well-established that the law of contracts governs marital settlement agreements."  ***Vaccarello v. Vaccarello***, 757 A.2d 909, 914 (Pa. 2000) (quoting ***Kripp v. Kripp***, 849 A.2d 1159, 1163 (Pa. 2004)); ***Stamerro v. Stamerro***, 889 A.2d 1251, 1259–1260 (Pa. Super. 2005)*.*

> Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation.  Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision.  However, we are bound by the trial court's credibility determinations.

***Kraisinger v. Kraisinger***, 928 A.2d 333, 339 (Pa. Super. 2007) (citation omitted).  Moreover, our courts observe the following principles in reviewing a trial court's interpretation of a marital settlement agreement:

> When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and absent an abuse of discretion, we will not usurp the trial court's fact-finding function.  On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

***Id***.

We have also reiterated this Court's limited role in interpreting contracts between spouses such as property settlement agreements:

> A court may construe or interpret a consent decree
> as it would a contract, but it has neither the power

- 3 -

nor the authority to modify or vary the decree unless there has been fraud, accident or mistake.

\* \* \*

It is well-established that the paramount goal of contract interpretation is to ascertain and give effect to the parties' intent. When the trier of fact has determined the intent of the parties to a contract, an appellate court will defer to that determination if it is supported by the evidence.

*Lang v. Meske*, 850 A.2d 737, 739 (Pa. Super. 2004) (internal citations omitted) (quoting *Osial v. Cook*, 803 A.2d 209, 213–214 (Pa. Super. 2002)). Further, where . . . the words of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the express language of the agreement itself. *Brosovic v. Nationwide Mut. Ins.*, 841 A.2d 1071 (Pa. Super. 2004).

*Bianchi v. Bianchi*, 859 A.2d 511, 515 (Pa. Super. 2004).

At the November 6, 2015 hearing on Wife's motion to enforce the PSA and SPSA, Wife testified that she has primary physical custody of the parties' eight-year-old daughter, M.C. N.T., 11/6/15, at 24. Wife averred that the order for support, which is unallocated between M.C. and Wife, is set forth in the PSA. *Id*. at 25. Wife, who did not work outside of the home during the parties' marriage, presently is employed as an assistant preschool teacher, earning $13,000 per year at an hourly rate of $10.25. *Id*. at 31, 51. Wife testified that Husband works at Coventry Corporate Services ("Coventry") in the area of business development for a secondary insurance market, earning "a million" dollars per year. *Id*. at 40, 73. Stephanie Baillie, the Director of Accounting and Employee Resources for Coventry, testified that Husband's

salary, excluding bonuses, was reduced to $300,000, down from $400,000. *Id*. at 74–75. When asked why Husband's income changed at the beginning of 2015, Ms. Baillie responded, "I was told to process a payroll change for that. I wasn't given specific reasons." *Id*. at 104. Wife presented Husband's W-2 statements from 2009 and 2010, which indicated gross wages of $1,253,085.11 and $1,336,010.92, respectively. *Id*. at 115. Wife also presented Husband's W-2 statement for 2014, which indicated a gross salary of $495,971.64. *Id*. at 122.

The hearing was continued to obtain Husband's testimony and ultimately was held on May 4, 2016. Husband testified that he had remarried and changed employment just the day before, on May 3, 2016. N.T., 5/4/16, at 4–5. Husband presented his W-2 for 2015, which showed his gross income at Coventry to be $352,936.44. *Id*. at 11. Husband testified his new salary at Miravast would be $250,000. *Id*. at 6, 12–13, 14. Husband's new job included the opportunity to earn commission income, but Husband presented no documentation of the contract's provisions. *Id*. at 26, 32. Husband admitted that he had not been paying Wife the monthly support as provided in the PSA since February of 2015, paying her instead, $1,800 per month. *Id*. at 33, 35.

Husband argues that the trial court erroneously considered the Pennsylvania Support Guidelines in determining Husband's support obligation because the parties are divorced and *alimony pendente lite* no

longer is applicable. Husband's Brief at 10. He further asserts that the trial court abused its discretion in failing to award him a downward modification of support because it is required by the PSA. *Id*. at 15. These arguments concern language set forth in the March 22, 2011 PSA and the June 14, 2016 order. The following language of the PSA is pertinent:

> **MONTHLY SUPPORT**
>
> **[Husband] will pay [Wife] $3,000 on the first day of a month or one half of the support payment bimonthly as unallocated support for [Wife] and [M.C.]**. All support payments will be made until [M.C.] is either 18 years old or graduated from high school and until [Wife] has remarried or cohabitated.
>
> * * *
>
> **[Husband's] obligations of this agreement will be modifiable in an amount downward, upon a substantial change of circumstances relating to [Husband] or [Wife], including, but not limited to changes in income, (downward defined as below $500,000 in a year** or upward which is $2M in a year), employment or financial condition, physical or emotional health, or other circumstances. If [Wife] obtains an Order for child support, the monthly support provided for in this agreement will [be] reduced dollar for dollar by the Order for child support.

PSA, 3/22/11, at 6 (emphases added).

The June 14, 2016 appealed order provides, in pertinent part, as follows:

> AND NOW, this 14th day of June, 2016, upon consideration of [Wife's] April 10, 2015 Motion to Enforce Marital Settlement Agreement, [Husband's] May 1, 2015 Answer and New Matter to Motion to Enforce Marital Settlement Agreement, following hearings on November 6, 2015[,] and May 4, 2016, and upon consideration of [Wife's] May 13, 2016 letter brief, and

[Husband's] May 13, 2016 letter brief, it is hereby ORDERED and DECREED as follows:

[Wife's] April 1, 2015 Motion is GRANTED as follows:

1) [Husband] shall continue to pay the monthly unallocated support amount of $3,000.00 for [Wife] and the parties' minor child pursuant to the terms of the March 22, 2011 Agreement and the June 24, 2013 Supplemental Agreement.

2) [Husband] shall pay to [Wife] all overdue support within thirty (30) days of the date of this order.

[Wife's] request for counsel fees is DENIED.

[Husband's] May 1, 2015 New Matter is GRANTED in part as follows:

1) The [c]ourt finds that the March 22, 2011 Agreement does allow for a downward modification of [Husband's] support obligations "upon a substantial change of circumstances relating to [Wife] or [Husband]." See Paragraph 3, page 6, March 22, 2011 Agreement. However, based on [Husband's] projected 2016 gross annual income of $277,000.00, and [Wife's] 2016 projected gross income of $13,089.00, (as [Husband] states in his letter brief), the Pennsylvania Support Guidelines indicate that **if** the Guidelines were applied, [Husband] would be obligated to pay $1,769.00 in child support, and $3,763.00 in alimony pendente lite, for a combined total monthly support obligation of $5,532.00. Because this amount is significantly higher than [Husband's] current agreed support obligation of $3,000.00 per month, the [c]ourt finds that [Husband's] support obligation under the March 22, 2011 Agreement is reasonable and does not require further downward departure.

2) The Court does not find that [Wife] must now demonstrate "need" to continue to receive her share of the $3,000.00 unallocated monthly support amount since both parties agreed in the March 22, 2011 Agreement that [Husband] would continue to make support payments until

- 7 -

the partiers [sic] child "…is either 18 years old or graduated from high school and until [Wife] has remarried or cohabitated."

Order, 6/14/16, at 1–2 (emphasis added). The June 24, 2013 SPSA does not modify the support amount nor does it allocate the monthly support obligation. Thus, the monthly obligation of $3,000 remains as unallocated support in the SPSA, as well.

Husband argues that the trial court should not have "utilized" the Pennsylvania Support Guidelines in its opinion because the parties are divorced. Once they divorced in 2013, Husband proffers that Wife had "no remaining right to spousal support or alimony *pendente lite* . . . which terminate, by definition, upon divorce." Husband's Brief at 12. Moreover, Husband asserts a contradictory claim that the trial court abused its discretion in failing to modify Husband's support obligation because his salary dipped below $500,000 per year. In support, he contends the PSA's language required the modification, yet he maintains that both parties were "aware that this amount **could** be modified downward." Husband's Brief at 17, 18 (emphasis added).

Regarding its use of the Guidelines, the trial court referred to Pa.R.C.P. 1910.16-1(b), which mandates that the amount of child or spousal support or alimony *pendente lite* to be awarded "pursuant to the procedures under [Pa.R.C.P.] 1910.11 and 1910.12 shall be determined in accordance with the support guidelines. . . ." Pa.R.C.P. 1910.16-1(b); **see also** Trial Court

- 8 -

Opinion, 10/6/16, at 7. Further, the trial court noted that Pa.R.C.P. 1910.16-4(a) sets forth the formula that "shall be used" to calculate an obligor's share of spousal support and alimony *pendente lite* obligations. Trial Court Opinion, 10/6/16, at 7. The court explained that Pa.R.C.P. 1910.16-4(a), Part IV, provides the specific formula for a calculation of spousal support or alimony *pendente lite.* The trial court determined that because neither party asserted that the PSA's designation of $3,000 as Husband's support obligation was solely for child support, the court's consideration of the Guidelines to determine a spousal support obligation was proper. Trial Court Opinion, 10/6/16, at 8.

Regarding Husband's claim that the trial court abused its discretion when it declined to award a downward support modification, the trial court stated that the clause providing for modification in the PSA did not **mandate** that a modification would occur; "it only states that [Husband's] support obligations 'will be modifiable' upon a substantial change in circumstances." Trial Court Opinion, 10/6/16, at 11. The trial court found that Husband's support obligation was modifiable but did not find a reduction in Husband's support obligation to be reasonable based on the evidence presented at the hearings. *Id*.

We do not find an abuse of discretion by the trial court. We construe words and phrases according to their common usage. *Cf.* 1 Pa.C.S. § 1903(a) ("[w]ords and phrases shall be construed according to rules of

- 9 -

grammar and according to their common and approved usage . . . ."). Moreover, the trial court was obligated to view the PSA as a whole. ***Bethlehem Steel Corp. v. MATX, Inc.***, 703 A.2d 39, 42 (Pa. Super. 1997). The language of the PSA, specifically its use of the phrase, "[Husband's] obligations of this agreement **will** be modifiable" as opposed to **shall** be modifiable, provides that a modification is permissible; it does not provide that it is mandatory. PSA, 3/22/11, at 6 (emphasis added); ***see***, ***e.g.***, ***Commonwealth v. Patterson***, 940 A.2d 493, 499 (Pa. Super. 2007) (stating "shall" evinces a mandatory obligation). Moreover, the PSA's use of the term "modifiable" rather than "modified" implies a less certain result, *i.e.*, that the support amount is merely "capable of being modified," not that such modification is mandatory. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, (Philip Babcock Gove ed., G. & C. Merriam Co., 1976.). Furthermore, Husband's own argument is contradictory—while he asserts, on one hand, that the court was required to modify support, he acknowledges that the parties understood that it merely "could" be modified downward. Husband's Brief at 17, 18.

Significantly, the PSA is silent concerning how any modification of monthly support would be determined. In fulfilling its role to determine whether a substantial change of circumstances occurred such that the PSA should be modified, and in the absence of guidance by the language of the PSA itself, the trial court merely drew a comparison to the Pennsylvania

Support Guidelines, it did not apply them. The trial court noted what Husband's obligation would be **if** the Guidelines were to be applied. Finding that they compelled an amount nearly double what Husband had agreed to pay under the PSA, the trial court did not abuse its discretion in declining a modification of the agreement based upon the evidence presented at the hearings. These issues lack merit.

In his final issue, Husband claims the trial court erred in determining that Wife is compelled to demonstrate a "need" to continue receiving "her share" of the $3,000 unallocated monthly support. Husband's Brief at 21. Initially, we note that Husband's reasoning flies in the face of his argument regarding the trial court's reference to the Support Guidelines. While he asserts that the court erred in referencing the guidelines in his first issue, he now suggests, *sub silencio*, that the trial court should have conducted a traditional support analysis of Wife's income, including assigning her an earning capacity. Husband's Brief at 23; N.T., 11/6/15, at 51–57.

This issue also lacks merit. We rely on the trial court's explanation, as follows:

> There was no evidence presented at the hearings that [Wife] had to demonstrate her need for her unallocated share of the $3,000.00 payment from [Husband] at any time. Nor is there any language in either the March 22, 2011 [PSA] or the June 24, 2013 [SPSA] which requires [Wife] to demonstrate need to continue to receive her share of the support payment, even under the paragraph providing for downward modification upon a substantial change of circumstances. March 22, 2011 [PSA], page 6. [Wife] was not required at the time the parties entered into the March 22, 2011 [PSA] and the June 24, 2013 [SPSA] to

demonstrate the need for alimony pendente lite, spousal support, or alimony. Nor do the agreement and the supplemental agreement require her to do so in the event of a modification of the support amount. Therefore, the court was not required to analyze the issue of [Wife's] entitlement to support when reaching a decision in this matter.

* * *

[N]othing in the March 22, 2011 [PSA], nor the June 24, 2013 [SPSA], requires [Wife] to demonstrate need in order to continue to receive her share of the $3,000.00 unallocated monthly support. [Husband's] obligation to pay monthly support to [Wife] is one which the parties agreed to. There were no contingencies to [Wife's] continued receipt of the monthly support, other than support ending upon the parties' child either turning eighteen years old or graduating from high school, and until [Wife] has remarried or cohabitated.

Trial Court Opinion, 10/6/16, at 8–9, 11–12. Upon review, we find that Husband's issues lack merit. Having determined, therefore, that the trial court properly analyzed this case, we conclude that the trial court did not abuse its discretion or commit an error of law.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2017

- 12 -