J-S36020-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| JOHN J. EWING, III | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| VICTORIA P. EWING | : | |
| | : | |
| Appellant | : | No. 61 WDA 2025 |

Appeal from the Decree Entered December 31, 2024
In the Court of Common Pleas of Butler County Domestic Relations at
No(s): FC-2022-90311

BEFORE:   PANELLA, P.J.E., NICHOLS, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:            **FILED: April 29, 2026**

Victoria P. Ewing (Wife) appeals from the divorce decree which affirmed the Marital Settlement Agreement (MSA) that she entered with John J. Ewing, III (Husband) prior to the parties' divorce. Wife argues that the trial court failed to consider whether Husband had breached the parties' MSA in dividing the marital estate. We affirm.

The trial court adopted the factual findings made by the Divorce Hearing Officer's (DHO) Report and Recommendations and found that "the DHO properly explained the reason for the decision, within her discretion, regarding the matters raised by Appellant, and the court adopted the DHO's Report and Recommendations disposing of the remaining issues in the divorce matter." *See* Trial Ct. Op., 3/10/25 at 2-4 (unpaginated).

_____

[*] Retired Senior Judge assigned to the Superior Court.

By way of background, Husband and Wife were married in June of 2001. *See* DHO Rpt. at 4. The parties separated after eighteen years of marriage in January of 2019 and Husband filed for divorce in June of 2022. *Id.* at 4; N.T., 8/22/24, at 55. After separation, Wife drafted a MSA in June of 2019 and both parties "agreed that the [MSA] was a valid agreement between the parties." *See* DHO Rpt. at 1, 10; *see also* Marital Settlement Agreement (MSA) (undated); N.T., 8/22/24, at 71, 97. The parties drafted the MSA without the assistance of counsel. *See* DHO Rpt. at 10.

The MSA identified and valued the parties' assets and debts, including the marital home and Husband's furniture installation business, JV Installation Services. *See* MSA; *see also* DHO Rpt. at 5. In Section 1.A.1. of the MSA, the parties agreed that Husband was "able to remain" at the marital residence "until such time as [Husband] can apply and receive his own mortgage" but, because "[Wife's] name currently resides on [the] mortgage . . .[Wife] shall have access to or be given proof that monthly mortgage has been paid." *See* MSA at 1.

In Section 1.A.2. of the MSA, the parties valued the equity in the marital residence at $80,000 and agreed that Husband would buy out Wife's share of the marital residence "in the amount of $30,000" and "an additional $10,000 is offered from [Wife] to [Husband] for her share of upkeep." *Id.*

Section 2 of the MSA addressed Husband's business, JV Installation Services and stated, *inter alia*, that:

2.A.2. JV Installation Services owes back taxes in which [Wife was] attached due to incorrect tax filings and association to [Husband] and JV Installation Services. In return for [Wife] not enforcing the closure of JV Installation Services to settle tax debts and removing the burden from her, [Husband] holds all responsibility to make payments to all tax agencies from the JV Installation income. If JV Installation Services closes by will or force, [Wife's] tax debt will be settled in proposal or offer to those agencies.

*Id.* at 2.

Section 5 of the MSA is titled "Buy Out Offer" and subsection B therein provided, in its entirety:

5.B. Buy-out Evaluation

| | |
|---|---|
| House/Residence | $30,000 |
| Education (Children) | $20,000 |
| Income variance (note: 6 years X average) | $120,000 |
| Loans ($3500 + 50% balance $4750) | $8,200 |
| Train Collection | $50,000 |
| | $228,200 |

*Id.* at 2.

In the next section, 5.B.1., "Buy Out Evaluation/Proposal," Wife "agree[d] to a discount for tax debt" on the buy-out amount based on the parties' tax debt of $72,000, resulting in a reduced buy-out amount of $144,000. *Id.* at 3.[1] In the following Section, 5.B.2., Wife offered Husband an additional discount on her buy-out amount, reducing it to $84,000, and

---

[1] We note that Wife agreed to the buy-out amount of $216,000 referenced in Section 5.B.2. *See* DHO N.T., 8/22/24, at 100.

offered two payment plan options to Husband, and Husband agreed to the first option of $1,000 a month for 84 months. *See id.*; *see also* N.T., 8/22/24, at 36. Husband began making payments to Wife pursuant to the first option in Section 5.B.2. and had paid $61,750 toward the total as of August of 2024. *See* Trial Ct. Op., at 2; *see also* DHO Rpt., 8/9/24, at 4; N.T., 8/22/24, at 14-15.

Husband did not re-finance the mortgage on the marital residence. Instead, in November of 2022, the parties sold the marital residence. *See* DHO Rpt. at 6-7. From the proceeds of the sale, Husband paid "over $104,000 of the back tax debt." *Id.* at 8.

The trial court appointed divorce hearing officer Melaine Shannon Rothey, Esq. (DHO Rothey) to review the parties' claims. *See* Trial Ct. Order, 2/9/24, at 1 (unpaginated). Both parties testified at a hearing on August 22, 2024. *See* DHO Rpt. at 1. On September 9, 2024, DHO Rothey filed her report and recommendations. Therein, she noted that the parties disputed whether Wife was "entitled to $30,000" from the sale of the marital residence. *Id.* at 8, 10-13. On September 19, 2024, Wife filed exceptions to DHO Rothey's report and recommendations. *See* Wife's Exceptions, 9/19/24 at 1. Therein, Wife argued that she was entitled to receive a total of $186,000, comprising of $84,000 in cash, $30,000 for the buyout of the marital residence, and $72,000 to represent Wife's forbearance of enforcing the closure of JV Installation Services, which was "conditioned upon [H]usband

assuming all tax debt payable from JV Installation Services income." **Id.** at 4.

On December 13, 2024, the trial court entered an order denying Wife's exceptions and adopting DHO Rothey's report and recommendation. **See** Trial Ct. Order, 12/13/21 at 1. On December 31, 2024, the trial court entered the divorce decree. **See** Divorce Decree, 12/31/24, at 1 (unpaginated).

Wife filed a timely notice of appeal and both Wife and the trial court complied with Pa.R.A.P. 1925.

On appeal, Wife presents the following issues:

1. Did the [trial] court err[] in failing to determine that because Husband did not receive his own mortgage Husband did not satisfy the condition to remain in residence at 105 Harvest Lane, Butler, PA 16002?

2. Did the [trial] court err[] in failing to determine Husband breached the [MSA] by not paying the tax debt from JV Installation income?

Wife's Brief at 7.[2]

Initially, we note that in her Rule 1925(b) statement, Wife argues that she is entitled to $30,000 for the buy-out of the marital residence, which the

---

[2] We note that in her Rule 1925(b) statement Wife included a claim that "the [trial court] erred for failing to "determin[e] Husband owes Wife the sum of $22,250.00, failing to set forth a specific time period when such payment is due." Wife's Rule 1925(b) Statement at 2 (unpaginated). Wife did not, however, include this claim in her brief. However, because Wife did not include these claims in her brief, they are abandoned on appeal and therefore waived. **See** Pa.R.A.P. 2116(a).

trial court addressed in its Rule 1925(a) opinion. However, on appeal, Wife did not discuss the issue in her brief or present factual and/or legal support for her claim on appeal. Therefore, she has abandoned this issue and it is waived on appeal. **See** Pa.R.A.P. 2116(a); **see also Commonwealth v. McGill**, 832 A.2d 1014, 1018 n.6 (Pa. 2003) (finding waiver where the appellant abandoned a claim on appeal).

In any event, even if the issue concerning the $30,000 buy-out was not waived, we agree with the trial court's reasoning that Wife was not entitled to an additional $30,000 on top of the $84,000 buy-out that Wife agreed to in the MSA. **See** MSA at 1-2; **see Rosiecki**, 231 A.3d at 932-33; **See** Trial Ct. Op. at 2-3.

In support of her first issue, Wife argues that Husband had "not satisfied the condition to 'remain' at the marital residence [because he had failed to] secur[e] a mortgage in his own name." **Id.** at 12. Wife contends that because the marital residence was a jointly owned asset and the MSA was "silent as to Husband's and Wife's interest . . . the deed controls ownership." **Id.** at 13, 17 (some formatting altered). Accordingly, Wife argues that she was deprived of "the benefits of the bargain she entered into – her share of the marital residence's sale proceeds" when Husband used the sale proceeds to pay the parties' tax debt obligations. **Id.** at 13-14.

In her second issue, Wife notes that Husband had agreed to pay the parties' tax debt obligations from his JV Installation business income pursuant to the terms of the MSA. **See id.** at 14. Wife argues that Husband breached

the terms of the MSA when he "satisfied the tax debt with the proceeds derived from the sale of the marital residence." ***Id.*** at 16. As a result, Wife contends that she was "deprived of the benefit of the bargain she entered into – foregoing the closure of JV Installation." ***Id.***

Our standard of review is as follows:

A settlement agreement between spouses is governed by the law of contracts unless the agreement provides otherwise. The terms of a marital settlement agreement cannot be modified by a court in the absence of a specific provision in the agreement providing for judicial modification.

When interpreting a marital settlement agreement, the trial court is the sole determiner of facts and, absent an abuse of discretion, we will not usurp the trial court's fact-finding function. On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion.

Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation. Our standard of review over questions of law is *de novo* and to the extent necessary, the scope of our review is plenary as the appellate court may review the entire record in making its decision. However, we are bound by the trial court's credibility determinations.

\*          \*          \*

In construing agreements involving clear and unambiguous terms, this Court need only examine the writing itself to give effect to the parties' understanding. In other words, the intent of the parties is generally the writing itself. In ascertaining the intent of the parties to a contract when unclear from the writing itself, the court considers the parties' outward and objective manifestations of assent, as opposed to their undisclosed and subjective intentions. Absent fraud, misrepresentation, or duress, spouses should be bound by the terms of their agreements.

*Rosiecki v. Rosiecki*, 231 A.3d 928, 932-33 (Pa. Super. 2020) (citations omitted and some formatting altered); *see also Lang v. Meske*, 850 A.2d 737, 740 (Pa. Super. 2004) (stating that "[t]he court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation" (citation omitted)). Further, this Court has stated that "when there is ambiguity within an agreement, the ambiguity shall be construed against the drafter." *See Logan v. Thompson*, 2078 EDA 2022, 2024 WL 5239590, at *15 (Pa. Super. filed Dec. 17, 2024) (unpublished mem.).[3]

> Here, the trial court explained:
>
> The DHO found that the language of the [MSA] is clear and unambiguous [and] further found that Wife's insistence, and her interpretation, that she is still owed $30,000 . . . from Husband to be [is]misplaced and not supported by the clear wording of the [MSA]. The DHO . . . [found] that the $30,000 at issue was included in the total owed for Wife's interest in the marital residence, as set forth in the part of the [MSA] entitled "Buy Out Evaluation/Proposal. . . . The DHO believes that is because it has been accounted for at the bottom on page 2 in Wife's valuation of her share of the marital assets.
>
> The DHO found that [Wife's] "argument fails because the [MSA] is not conditioned upon Husband paying the tax debt from his [business] income and it does not provide a sanction if he pays it from another source . . . . The fact that he sold the residence sooner than was expected and that he did not actually receive the proceeds in his pocket is irrelevant. The relevant fact is that the debt was paid from funds that belonged to Husband." [DHO Rpt. at 13].

---

[3] *See* Pa.R.A.P. 126(b) (stating this Court may rely on unpublished decisions of this Court filed after May 1, 2019, for their persuasive value).

> In conclusion, the DHO properly explained the reason for the decision, within her discretion, regarding the matters raised by [Wife], and the [trial] court adopted the DHO's report and recommendation disposing of the remaining issues in the divorce matter.

*See* Trial Ct. Op., at 2-4 (some citations omitted and some formatting altered).

Following our review of the record, we discern no abuse of discretion or error of law in the trial court's conclusions. *See Rosiecki*, 231 A.3d at 932-33. Specifically, we agree with the trial court's conclusion that, while the MSA in Section 2.A.2. contemplated that Husband would pay off the parties' tax debt obligations from his business income, the MSA did not "provide a sanction if he pays it from another source." *See* Trial Ct. Op., at 3; *see also* MSA at 1; *Lang*, 850 A.2d at 740 (stating that "[t]he court must construe the contract only as written and may not modify the plain meaning of the words under the guise of interpretation" (citation omitted)). Therefore, Wife is not entitled to relief. For these reasons, we affirm.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 4/29/2026

- 9 -